**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**
www.flsb.uscourts.gov

**In re:**

                Case No. 23-16430-MAM

**ROBERT ALLEN GIBSON,**

                Chapter 13

    Debtor.

_____/

## OBJECTION TO CONFIRMATION OF PLAN

    Interested Party, Ethan Michael Bendavid ("Bendavid"), by and through his undersigned counsel and pursuant to 11 U.S.C. § 1325(a)(3) and (7), files this Objection to Confirmation of the Chapter 13 Plan [ECF No. 26] filed by Robert Allen Gibson (the "Debtor"), as follows:

    1.    In item 33 on page 8 of the Debtor's Bankruptcy Schedule B [ECF No. 28], which Debtor signed under oath and penalty of perjury on September 6, 2023, Debtor lists a claim against Bendavid 2022-CA-0105948 (the "State Court Action") in an "**unknown**" amount.

    2.    However, on April 12, 2023, Debtor signed Answers to Bendavid's First Set of Interrogatories filed in the State Court Action whereby Debtor states that the amount of the purported compensatory damages being sought by him against Bendavid in the State Court Action total **$169,400.00**, a copy of which is attached hereto as Exhibit "A".

    3.    As such, Debtor has made false a representation under oath in his Bankruptcy Schedule B.

    4.    Moreover, during discovery in the State Court Action, Debtor produced a Non-Recourse Promissory Note in the principal amount of $75,000.00 in favor of Nutritox LLC and Scott Bradely Meyrowitz, a copy of which is attached hereto as Exhibit "B".

    5.    This purported debt to Nutritox LLC and Scott Bradely Meyrowitz is not listed in Debtor's Bankruptcy Schedules, which were signed under penalty of perjury.

6. As such, Debtor has made yet another false representation under oath in his Bankruptcy Schedules.

7. Accordingly, the Debtor's Plan cannot be confirmed because it has not been proposed in good faith in violation of 11 U.S.C. § 1325(a)(3):

> At the forefront, accurate disclosures are a foundational expectation of those seeking bankruptcy relief. See Fed. R. Bankr. P. 1008 (requiring verification or unsworn declaration for "[a]ll petitions, lists, schedules, statements and amendments thereto"); *In re Shelton*, 370 B.R. 861, 868 (Bankr. N.D. Ga. 2007) ("The easiest way to violate § 1325(a)(3) is to misrepresent, lie, or otherwise mislead the court."); *see also In re Russell*, No. 12-80537-WRS, 2012 Bankr. LEXIS 5474, 2012 WL 5934648, at *9 (Bankr. M.D. Ala. Nov. 27, 2012) (dismissing with prejudice and barring discharge of all future debts due to, among other reasons, a number of errors and omissions on Schedules and Statements leading to "questionable accuracy" of filings). A fresh start is only afforded to the honest, but unfortunate debtor. *Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365, 367, 127 S. Ct. 1105, 166 L. Ed. 2d 956 (2007). To obtain the benefits of bankruptcy and achieve a fresh start, debtors are tasked with an unavoidable duty and expectation of forthright disclosures. See 11 U.S.C. § 521; *In re White*, 618 B.R. 748, 754 (Bankr. E.D.N.C. 2020) ("[A] debtor must approach the bankruptcy process prepared to forthrightly abide by the Code's requirements, without purpose of evasion or in hopes of omitting required disclosures."). Section 521 lists Debtor's required disclosures, including creditors, assets, and liabilities. Failure to comply with § 521 can preclude confirmation. *In re Green*, 141 B.R. 440, 442 (Bankr. M.D. Fla. 1992); *In re Lindsey*, 122 B.R. 157, 160 (Bankr. M.D. Fla. 1991) ("[T]he court and the creditors are entitled to full and accurate disclosure of the debtors' financial status."). While Debtor's initial Schedules and Statement of Financial Affairs were filed timely, the record reveals the documents were not accurate at the outset.

*In re Devaughan*, 2023 Bankr. LEXIS 1696, *5-7 (Bankr. M.D. Ala. July 5, 2023).

8. In *Devaughan*, the bankruptcy court denied confirmation and dismissed the bankruptcy case:

> Looking at the totality of the circumstances, the Court finds that Debtor did not meet his burden to establish good faith pursuant to §§ 1325(a)(3) and (7). Here, Debtor's lack of good faith in filing the petition is not something that can be

2

remedied by an amended plan; thus, opportunity to amend would be futile and Debtor's case is due to be dismissed. While the Court recognizes this is a harsh outcome, the Court cannot ignore or condone Debtor's disregard for his obligations under the Code to be forthright in his disclosures and filings.

*Id.* at *11.

9. Similarly in this case, the Debtor's disregard for his obligations under the Code to be forthright in his disclosures and filings mandates denial of confirmation and dismissal with prejudice for a period not less than two (2) years.

**WHEREFORE**, Ethan Michael Bendavid respectfully requests the entry of an order denying confirmation, dismissing this case with prejudice for a period of not less than two (2) years and awarding such further relief deemed appropriate under the circumstances.

Dated this 21st day of September, 2023.

> **LAW OFFICE OF MARK S. ROHER, P.A.**
> *Counsel for Ethan Michael Bendavid*
> 1806 N. Flamingo Road, Suite 300
> Pembroke Pines, Florida 33028
> Email: mroher@markroherlaw.com
> Telephone: (954) 353-2200
>
> By:   */s/ Mark S. Roher*
>           Mark S. Roher
>           Florida Bar No. 178098

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 21st day of September, 2023, a true and correct copy of the foregoing was served by CM/ECF on all parties of record.

> */s/ Mark S. Roher*
> Mark S. Roher

3

# EXHIBIT "A"

## RESPONSE TO BENDAVID'S FIRST SET OF INTERROGATORIES BY ROBERT GIBSON
## (Under Penalties of Perjury)

### PREFACE

One Hundred Thirty-six (136) days ago, on November 27, 2022, Defendant, Ethan Michael Bendavid ("Bendavid") through counsel, Mark S. Roher, filed his notice of appearance along with his First Set of Interrogatories, making the interrogatories due on December 27, 2022, between Christmas and New Year's.

On December 27, 2022, my attorney filed a motion for extension of time to comply with Defendant's request for interrogatories, due primarily to the severely failing health of my 94-year-old father over the holidays.

On January 10, 2023, the court entered an agreed order requiring me to respond to interrogatories within twenty days and for Defendant to file its now seriously late answer to the complaint by January 23, 2023.

My Father died on January 18, 2023, and we buried him February 4, 2023.

My attorney's mother died [unexpectedly?] on??? 2023,

Notwithstanding the above, communication attempts ensued between my attorney and Defendant to both coordinate the depositions of the parties and of a seriously and possibly fatally ill third party witness and to resolve discovery objections.

We have still not been able to schedule deposition, notwithstanding my attorney offering and agreeing on dates, in addition to rebuffed attempts to resolve the seriously objectionable discovery requests made by Defendant,

Rather than respond with blanket objections to Defendant's discovery requests, my attorney attempted to communicate with Defendant to negotiate modification and/or extended time to obtain material from my predecessor, Scott Bradley Meyrowitz, along with seeking permission to release communications between me and Mr. Meyrowitz that are unrelated to this case and not likely to produce usable evidence.

Due to ongoing lack of cooperation, I looked forward to resolving the issues at the March 6, 2023, case management conference, set by the court on February 9, 2023.  However, counsel for Defendant never appeared at the **mandatory** hearing.

Defendant subsequently filed a motion for order to show cause, which I welcomed, so that the true behavior of opposing counsel might be made clear.

At the hearing, I personally witnessed opposing counsel interrupt the court five (5) times, ultimately resulting in my attorney being cut off before finishing the second sentence of her argument, opposing Mr. Rorer's inaccurate representations and leading the court to believe among other inaccuracies, that it had been six (6) months since the request for discovery was received.

The record reveals Mr. Roher's lack of candor, clearly showing that it had been four and one-half (4½) months since the original requests and two and one-half (2½) months since due, interlaced with parental deaths of me and my attorney, sporadic and uncooperative communication by Mr. Roher along with his failure to attend a **mandatory** case management hearing at which time the situation should have been resolved.

### ALL ANSWERS ARE THROUGH INFORMATION AND BELIEF AS RELATED TO ME BY OTHERS.
### (UNLESS OTHERWISE INDICATED)

Defendant has requested that I provide, under oath, responses to interrogatories on behalf of me and my predecessor. As a successor in interest and not a participant in the pre-litigation behavior alleged, much, if not all of my answers are hearsay, relayed to me by my predecessor and others.

### RESPONSES TO INDIVIDUALLY NUMBERED PARAGRAPHS

1. *Identify all persons with knowledge of any facts or information relevant to any of the claims, allegations, or facts stated in the Complaint and list any and all documents that support Your answer.*

ANSWER:

All supporting documents currently known to me are included in the discovery request for production of documents to follow:

<u>Names of Fact Witnesses</u>

Rubin Da Silva Kirnos,

Ethan Michael Bendavid

Antonio Tiger Williams, Jr.

Margaret "Mary" Clifton,

Andrew "Andy" Novotak,

Mark Teller,

Allan Shore,

Vick Charles,

Geo Odom,

David Webb,

Officer Steffi Jean-Jacques pre probation officer who visited Mr Bendavid's house.

FBI officers (names unknown) who came to Mr. Bendavid's home while Mr. Meyrowitz resided there and gathered information on the Tahoe.

2. *List and describe each and every item of compensatory damages which You claim in this case.*

ANSWER:

| # | Item | Amount |
|---|---|---|
| 1. | Tahoe 2007 Truck | $9,000.00 |
| 2. | 7 Oil paintings 3 Pribyl 1 Kinibly 3 parents painting | $40,000.00 |
| 3. | 12 Pairs Cowboy boots | $16,000.00 |
| 4. | 10 Pairs designer jeans | $4,000.00 |
| 5. | 10 Suit Dress Shirts | $3,000.00 |
| 6. | Versace long Jacket | $3,500.00 |
| 7. | Canali long jacket | $3,500.00 |
| 8. | 3 Sports Jackets | $4,000.00 |
| 9. | 4 Suits Designers Ties | $7,800.00. |
| 10. | 2 Versace Belts | $2,000.00 |
| 11. | Hanro underwear Socks | $750.00 |
| 12. | Workout cloths (lululemon) | $4,000.00 |
| 13. | 3 pairs Sneakers | $1,000.00 |
| 14. | 40 Bottles cologne | $2,000.00 |
| 15. | Travel Tumi bag | $500.00 |
| 16. | Gun bag, Glasses | $450.00 |
| 17. | 4 Pillows | $400.00 |
| 18. | Legal paperwork | $10,000.00 |
| 19. | 100 DVDs | $2,000.00 |
| 20. | Books | $1,500.00 |
| 21. | 1 Apple laptop | $2,500.00 |
| 22. | 1 Apple phone | $1,400.00 |
| 23. | Boxed Diamond, Watch | $35,000.00 |
|  | with cash | $2,500.00 |
| 24. | 3 Fishing Rods | $1,000.00 |
| 25. | 1 Water Pick | $250.00 |
| 26. | Electric Toothbrush | $300.00 |
| 27. | Prototype Mailbox | $2,500.00 |
| 28. | 2 I pod Apple | $200.00 |
| 29. | Bicycle Shoes and Helmet | $400.00 |
| 30. | Box of Stones Left in the bedside dresser Ammonite, Oxblood coral, Ruby's, Sapphire's, Small Mele Diamonds. | $10,000.00 |
| 31. | Wallet with Birth certificate, Padi License, Carrying gun License, Leather wallet | $400.00 |

| Total | $169,400.00 |
|---|---|
| Andy Novatek retrieved Teeter bench from Ethan Bendavid | $500.00 |

3 *List and describe each and every one of the "valuable possessions" alleged in paragraph 5 of the Complaint.*

ANSWER:

See No. 2.

4. *Describe in detail, the circumstances surrounding the delivery of the Tahoe to Bendavid as alleged in paragraph 7 of the Complaint.*

ANSWER:

Mr Bendavid invited Mr Scott Meyrowitz to stay with him while he was going through his divorce. Apparently, Mr. Meyrowitz thought they were good friends. Mr. Meyrowitz brought 4 SUV loads of personal items from his marital home along with the Tahoe which he drove until going to prison, at which time he left his personal property in the care of Mr. Bendavid along with the Tahoe for pick by Andy Novotak.

5. *Describe in detail, the circumstances surrounding the delivery of the personal items worth in excess of $150,000 to Bendavid for safekeeping as alleged in paragraph 8 of the Complaint.*

ANSWER:

Mr Bendavid invited Mr Scott Meyrowitz to stay with him while he was going through his divorce. Apparently, Mr. Meyrowitz thought they were good friends. Mr. Meyrowitz brought 4 SUV loads of personal items from his marital home along with the Tahoe which he drove until going to prison at which time he left his personal property in the care of Mr. Bendavid along with the Tahoe for pick by Andy Novotak.

6. *List and describe each and every one of the personal items worth in excess of $150,000 to Bendavid for safekeeping as alleged in paragraph 8 of the Complaint.*

ANSWER:

There is no allegation that any single item referenced in Paragraph 8 of the Complaint is worth in excess of $150,000. The itemized list of Mr. Meyrowitz's known personal items entrusted to Defendant Bendavid is as follows

7. List and describe each and every item of art, jewelry, unmounted precious stones and irreplaceable financial and legal documents referenced in paragraph 8 of the Complaint.

ANSWER:

See No. 2

8 List and describe each and every item of correspondence between You and Bendavid and attach these documents to Your response to this interrogatory.

ANSWER:

I have had no correspondence with Mr. Bendavid outside of the litigation documents. I am informed by Mr. Meyrowitz that there was a letter. Before he left Mr Bendavid's home he left a letter and $200.00 cash with everyone's contact information on it. Additionally, he sent Mr Bendavid four {4} letters, with only the last one admitted as being received and called from the Prison, Mr. Bendavid refused to answer the phone.

9- Describe in detail, how exactly Bendavid "conspired to commit the unlawful act of theft by conversion and forgery giving rise to an independent cause of action for Conversion in pursuance of the conspiracy," as alleged in paragraph 19 of the Complaint.

ANSWER:

Again, Mr Bendavid refused to answer phone calls and refused all letters from Mr. Meyrowitz after he arrived at Prison Camp in Estell SC, instead, ==hooking up with the co-defendants== and retaining or transferring each personal item along with turning over the Tahoe to his co-defendants to be sold through a forged title.

10. *List and describe each and every demands from Meyrowitz for the return Tahoe and other property as alleged in paragraph 23 of the Complaint.*

ANSWER:

After 22 months of refused phone calls from Estell, by phone call from halfway house after returning from prison on phone owned by David Webb.

11. *Describe any and all consideration that You paid to Meyrowitz for his assignment of all right and title to the causes of action set forth in the Complaint.*

ANSWER:

==$75,000.00==

12. List the current address and location and mailing address of Meyrowitz.

ANSWER:

I do not have Mr. Meyrowitz residence address and he refuses to provide his home address due to threats of violence by Mary Clifton and Rubin Kirnos." Mr Kirnos has been convicted of battery and is believed of being capable of carrying out his threat. Since Mr Kirnos and Ethan Bendavid are friends he fears for his wellbeing and safety if he reveals his physical address..

13. *Describe in detail, the scheme advanced by co-defendant Kirnos, co-defendant Bendavid turned over the Tahoe to co-defendants Kirnos and Clifton, to be sold through forgery of title," as alleged in paragraph 25 of the Complaint.*

ANSWER:

While in prison, Ms. Clifton visited Mr. Meyrowitz and advised that she had found the subject Tahoe abandoned in the woods and had sold it for scrap. After Mr. Meyrowitz returned from prison Mr. Bendavid accepted his phone call and advised that he had loaded up all Mr. Meyrowitz's personal property in the Tahoe, parked it on the street with the keys in the ash tray and that is had subsequently disappeared. On information and belief, Mr. Bendavid turned the Tahoe over to his co-conspirators to sell through a forged title.

14. *Describe in detail, the factual circumstances of exactly how "the personal items of Predecessor Meyrowitz were divvied up, in a manner to be established at trial, for sale, disposal, or retention by the individual co-conspirators in accordance with some distribution formula, As alleged in paragraph 26 of the Complaint.*

ANSWER:

*The exact manner of distribution is unknown to me at this time and expected to be determined during depositions, discovery and trial.*

15. *Describe in detail, the factual circumstances of exactly how Bendavid "committed theft by conversion when [he knowingly obtained and liquidated the Tahoe and divvied up the valuable and irreplaceable personal items, with intent to either temporarily or permanently deprive Predecessors of their right and benefit of the Tahoe and personal items," as alleged in paragraph 28 of the Complaint.*

ANSWER:

While in prison, Ms. Clifton visited Mr. Meyrowitz and advised that she had found the subject Tahoe abandoned in the woods and had sold it for scrap. After Mr. Meyrowitz returned from prison Mr. Bendavid accepted his phone call and advised that he had loaded up all Mr. Meyrowitz's personal property in the Tahoe, parked it on the street with the keys in the ash tray and that is had subsequently disappeared. On information and belief, Mr. Bendavid turned the Tahoe over to his co-conspirators to sell through a forged title.

16. Describe in detail, how You arrived at the conclusion "that the conservative value of the Tahoe and personal items at the time of conversion conservatively totaled in excess of hundred fifty thousand dollars, ($150,000),"as alleged in paragraph 30 of the Complaint.

ANSWER:

I reviewed contemporaneous and comparable vehicles historical sales and reviewed the non-exhaustive personal property list provided by Mr. Meyrowitz and concluded that the valuations listed were reasonable.

## **VERIFICATION**

I have read, verify and affirm under penalty of perjury the foregoing to be true and correct to the best of my knowledge on information and belief and where so stated or implied by context, to my direct and personal knowledge.

By: _____
Robert Gibson

Its:

STATE OF FLORIDA     ]
                     SS
COUNTY OF BROWARD]

Sworn to and subscribed before me this 12th day of April, 2023, by Robert Gibson. He has produced a State of Florida Private Investigator's License as identification and did take an oath.

_____
Notary Public

Richard Beharry
Comm.:HH 196456
Expires Nov. 8, 2025
Notary Public- State of Florida

## VERIFICATION

I have read, verify and affirm under penalty of perjury the foregoing to be true and correct to the best of my knowledge on information and belief and where so stated or implied by context, of my direct and personal knowledge.

By: ______________________
Robert Gibson

Its:

STATE OF FLORIDA )
) ss
COUNTY OF BROWARD )

Sworn to and subscribed before me this 12th day of April, 2023, by Robert Gibson. He has produced a State of Florida Private Investigator's License as identification and did take an oath.

______________________
Notary Public

Richard Beharry
Comm.:HH 196456
Expires: Nov. 8, 2025
Notary Public - State of Florida

# EXHIBIT "B"

## NON-RECOURSE PROMISSORY NOTE

FOR VALUE RECEIVED, the undersigned, Robert Gibson (the "Debtor") of 6750 N Andrews Ave, Suite 2150 Ft. Lauderdale, Florida 33309-2173, promises to pay to the order of Nutritox LLC and/or Scott Bradley Meyrowitz (the "Lender(s)") or their assigns, at location(s) as Lender(s) may designate in writing, in lawful money of the United States of America and in immediately available funds, up to the full principal amount of Seventy-Five Thousand Dollars ($75,000) with interest at the rate of six percent (6%) per annum.

Principal and interest shall accrue and be payable from security as established by that certain contemporaneously executed Agreement for Purchase of Cause of Action, on or before the first of each month until paid in full. The unpaid principal balance of this note at any time shall be the total amount loaned hereunder by the Lender less any prepayments of principal made hereon by or for the account of Debtor. Debtor shall have the right to prepay this note, in whole or in part, at any time without penalty.

In the event Debtor fails to pay the unpaid principal balance of this note and interest due hereunder by the date due, after receipt of written notice by Lender ("Event of Default"), Lender may proceed to protect and enforce his rights by suit in equity and/or by action at law or by other appropriate proceedings. No delay on the part of Lender in the exercise of any power or right under this note, or under any other instrument executed pursuant thereto shall operate as a waiver thereof, nor shall a single or partial exercise of any other power or right preclude further exercise thereof. Notwithstanding anything to the contrary contained herein, if an Event of Default shall occur, all payments thereafter made hereunder shall be applied, at the option of Lender, first to costs of collection, interest, and then to principal.

It is hereby specially agreed that if this note is placed into the hands of an attorney for collection, or if proved, established, or collected in any court, Debtor agrees to pay to Lender an amount equal to all expenses incurred in enforcing or collecting this note, including court costs and reasonable attorneys' fees.

Except for the notice expressly provided herein, Debtor hereby waives presentment for payment, notice of nonpayment, demand, notice of demand, protest, notice of protest, diligence in collection, grace and without further notice hereby consents to renewals, extensions, or partial payments either before or after maturity.

This note shall be governed by and construed in accordance with the laws of the State of Florida and the United States of America. In the event any one or more of the provisions contained herein shall be invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of the remaining provisions contained herein shall not in any way be affected thereby.

THIS IS A NON-RECOURSE NOTE WHICH IS SECURED SOLELY BY THAT CERTAIN AGREEMENT FOR PURCHASE OF CAUSE(S) OF ACTION CONTEMPORANEOUSLY EXECUTED AND PROVIDES FOR NO LIABILITY BEYOND, AS TO MAKER.

ROBERT GIBSON

Signed: [signature]    Dated: October 29, 2021

Gibson Production 002